Good afternoon. Illinois Appellate Court First District Court is now in session. The First Division, the Honorable Justice Carl Anthony Walker presiding, case number 1-9-1-4-4-7, Jane Doe versus Match.com, LLC. Good afternoon, everybody. I'm Justice Walker, and I have with me Justice Hyman and Justice Pierce, and I'd like to have the attorneys, if you could please introduce yourselves. Yes, Dan Kirschner on behalf of Appellee Jane Doe. Good afternoon. Richard Gilbaugh on behalf of the defendant, Appellant Brian Logan. Okay. And Mr. Gilbaugh, we'll start with you. How much time do you need today? I think 15 minutes will be okay, and I'll reserve five minutes for rebuttal. I'm not sure that I'll use the full 15 minutes, but we'll see how long is necessary. Sure. And Mr. Kirschner, how much time do you need today? 15 would be more than enough. If I go 10, you have my permission to cut me off. Okay. Well, what we do generally is once you run out of time, we will let you know that you're out of time. If there's a point that either of you really wanted to make to us and you didn't get to that because the justices are asking lots of questions, just let us know, and we'll usually give you time to make that point to us. We believe that's important to hear from you all. So with that, Mr. Gilbaugh, if you can get us started, please. Yes. Good afternoon, Your Honors. So the defendant, Appellant, brings this appeal following the trial court's denial of his 2-1401 motion to set aside a default judgment. And he asked the court to find that the service was defective and that the trial lacked personal jurisdiction to enter the default order in 2016. So the purported service on defendant was made by a fax from plaintiff's counsel to an attorney who had previously represented this defendant in a prior related case. The question boils down to, as you know, whether the client gave permission to the lawyer to accept the service. Now, would you agree that that is the issue? Absolutely, Your Honor. Absolutely. Go ahead. So that is the issue. So the only live witness that the trial court heard on this 2-1401 motion was the defendant himself. And he testified that he didn't give permission to this attorney to accept service. He testified that he hadn't spoken to this attorney for months prior to this purported service. And he testified he didn't even talk to this criminal attorney about this civil case. And the judge found his testimony not credible. That's right. Yes. And isn't this a manifest way to the evidence case? It is because there was an evidence hearing. Yes, it is. Okay. And we have the affidavits from Mr. Kirshner and from Mr. Fay. Correct. So the affidavits we submit, the trial court improperly considered because the affiance don't have personal knowledge of the facts that they're attesting to. The attorney, Michael Fay, the criminal attorney, said he has no specific recollection of his involvement in the case. And then he goes on to state a conclusion, and I think it's a hypothetical that he wouldn't have done it unless he had the client's permission. But he didn't actually say that he talked to the client, that he communicated with him somehow, and the client agreed to him accepting service. He didn't. Apparently, he had no recollection one way or the other, because he no longer had his file. But there is frequently testimony. If somebody doesn't recollect, they'd say, is that your practice that you usually follow? And he said, yeah, I mean, that's what I usually do. Well, I would suggest that he didn't, the affidavit didn't set out that he has a practice of doing something in this situation, or they had a habit of doing something in this situation. He just said that he thinks he would have, basically. And I submit that that's not enough, especially when you first you disclaim personal knowledge, which is required under Rule 191 for affidavits submitted under these types of motions. As I listen to your argument, you are also arguing that since it's an issue of first impression in Illinois, would you agree? Correct? I think so, yes. So that it would, the acceptance of service by an attorney with permission by the client, knowing permission by the client would be appropriate as a matter of law in Illinois. But you're, are you saying then, I'm not asking you this, may not be, I'm not trying to put words in your mouth. In this case, they haven't shown sufficient facts to get into that exception. Well, Your Honor, I'm not sure that it would be appropriate. I know that in cases where attorneys accept service for a litigant, they will appear and that will resolve any issue of service. That's essentially a waiver. By appearing for the litigant, you're waiving service. That's usually what happens. I understand that. And I know there are cases that talk about, if you have an agreement, you can make a contract to waive service, waive defenses, including service, and that's fine under the law as well. But I submit we don't have that here. We don't have evidence of an agreement. We have evidence that the defendant didn't even speak to this attorney about this. But one of the things that I carefully looked for in your reply brief, and that I found no response to, which usually is a flag of something, had to do with the plaintiff's of law in four or five states that have considered situations such as we have before us here. And as to those situations, I didn't see any response saying that we shouldn't follow what apparently other states do in these circumstances. They said in Wisconsin law, I think Minnesota, New York, Florida, maybe one more. Yes, Your Honor. And I'm trying to remember. I looked through your brief a couple of times and I didn't see it. Sure. I mean, so Your Honor, the difference, Illinois law, the Illinois Supreme Court has said in the Phil State Bank of Lake Zurich versus Phil case that, you know, statutes concerning service of process are strictly construed. And absent a general appearance, a waiver, the service must be accomplished under the statute. So in Illinois, we have statutes about, I don't know about Wisconsin statute for service of process, but in Illinois, we have specific statutes. But other states have statutes. I don't think that makes the point because in those other cases that you even acknowledge where there's been an attorney receive service and then files an appearance, the statutes would apply. So it applies there. Why wouldn't it apply here? The fact is just because a lawyer does not file an appearance, there may be various reasons why the lawyer wouldn't file an appearance. The difference is when there is an appearance filed, then it's not an issue anymore because it's essentially a waiver of service. So unless there's been, well, but why, but why does the other cases, as I said, the other cases in the other states don't go that far. They'd say simply accepting is enough. And why shouldn't we follow that concept which seems to follow from the Thrill case that you cited, which was a public entity. It would seem to spring court and there's language in that decision. It seems to imply that it would be okay in this situation as well. Well, I think Phil was an individual, your honor. I think Sarkison was a public entity. I mean, we have a specific scheme in Illinois about how jurisdiction is acquired over the person. We have the codicil procedure and we have case law establishing how it's done. These are the rules when a party files a lawsuit. And I don't think the Phil and the Sarkison cases acknowledge the possibility of those being flexible. Now, I recognize in some cases, when there's a written contract, courts have said that's fine because it's written and it's not in question. But when we're talking about someone accepting service, I mean, the acts of an attorney have to be authorized. I focused on the case. But that's what's the point. The whole point of the hearing was to have evidence of whether it was authorized or not, wasn't it? Yes, yes. And what's wrong with that? Instead of a written contract, there was a agreement that was confirmed with the documentation that was presented in Mr. Faye, Mr. Kirshner's affidavits. Well, your honor, I submit that it wasn't confirmed because Mr. Faye first didn't recall speaking to Mr. Logan, the client. Any authority must come from the client. The attorney can't create the authority on his own. The judge listened to it, said that it was not Oh, yeah, I did get a summons in a complaint. And he signed an affidavit where he said he didn't even know what it was, which is kind of troubling that somebody would sign an affidavit with words that they don't understand. But then at the hearing, he understood what it was. So maybe all of a sudden he realized, yeah, he did get it. So, you know, for various reasons, the judge didn't find him credible. And we have to rely on what the judge found at that hearing, don't we? Well, your honor, I think we have to look at the reason he found them not to be credible. And the reason was that was that receipt of the 2016 summons, as your honor mentioned. I mean, this is five years later from the 2011 service. So I cited the Bucktown partners case, which stands for the point that the trial court can't choose to simply disregard a witness's testimony based on finding them not credible on a collateral issue, when the material issue hasn't been rebutted by any other witnesses, isn't rebutted by counter witnesses. The trial court can't simply ignore it. I mean, we're talking about a collateral issue. We're talking about if he got it in the mail in 2016, five years later. I mean, the Supreme Court is clear that it service is not waived, service is still required, even if somebody has actual knowledge. The difference here, Mr. Gilbaugh, with the credibility finding, this is not a situation where he testified to one thing at a hearing, and then later on, he says, oh, I misremembered it then and I remember it better now. This is a situation where in the same hearing, he testified that he had never received a summons, and then he states, yes, I did receive it in the same hearing. And there was nothing to say, oh, well, now I remember better today than I did yesterday, because that happens with witnesses all the time. Sometimes things happen that will jog your memory, but that's not the case here. So this was a little bit more of a credibility issue than you would often we see in cases where the judge makes a credibility finding and just based on demeanor or whatever, and demeanor is tough because different cultures, different demeanor means something different. But this wasn't based on demeanor. This is based upon his direct testimony. So how do we reconcile that? So I believe what happened at the hearing was that the defendant was shown this summons in a packet of motion for default packet of 40 to 50 pages, usually these motions for default summons was included within that packet, and that was mailed to him in 2016. So once he saw that, he said, yeah, I guess I got it, is what his testimony was, because it was buried in lots of documents. I don't think it's the same thing as receiving a summons, and it's the first page is a summons, and you see it's a summons. It's a distinguishable situation when something is in the mail amongst a lot of documents, and it's not the first document. It's not the first page of the document. But the trial court said, I don't find Mr. Logan credible on this issue. He said, on this issue, and by this issue, he was talking about the authorization of Mr. Faye in 2011. He found him not credible on that issue. But there was... You made that clear in your brief, because you actually state that you deal with this in your brief, but it's almost as if you recognize the issue in your brief, rather than the way you just explained it. It comes across different now as you explain it. Okay. Well, I hope that means it was more clear, Your Honor. It is more clear now. Okay. But I do believe that it's in the transcript, that this was in a page of a large document. We're not talking about receiving a summons, not attached to anything else. We're talking about a summons in a stack of a lot of documents that Mr. Logan received. And that's five years later. Again, the issue is whether he was served in 2011, not whether he received something in the mail in 2016. But let's come back to this other issue, though, because you had the affidavit from Mr. Faye, the affidavit from Mr. Kushner, and the affidavit, it seems as though one supports the other, because Mr. Faye says, well, I'm not sure, but this is how I normally would have done it. But then you get the affidavit from Plaintiff's Counsel, which says, yeah, that's exactly how it occurred. I called, and he said, I'll call you back. And then he called me back and said, yes, I'll receive it. Then they sent the information to him, along with a confirmation letter, pursuant to our conversation, we're sending you these documents. So, and that's where the strength of two affidavits come in, is that they're actually saying the same thing. Well, Your Honor, the point I'd like to make there is, again, this attorney, Mr. Faye, cannot create an authorization where the defendant didn't authorize it. So, in the affidavit of Plaintiff's Counsel, I believe his notes say that Mr. Faye will accept service. That's what his notes say. And in the affidavit itself, he said he requested Mr. Faye to accept service. I don't see- It sounds to me from the record that Mr. Faye actually left a voicemail message. Is that correct? Yes, yes. Wait, was that voicemail message ever produced? No, no, it was not. Okay. So, but even in that, the language of that voicemail, which is relayed in this affidavit, which I pointed out, I contend is a double hearsay and shouldn't have been considered in the first place. But he said that he had defendant Logan's authority to accept service. It's, it's in the passive voice. It's not actually stating facts that, that, that the defendant spoke to this lawyer, met with him or communicated with him somehow and gave authority. It's, it's, it's not detailed enough. It doesn't establish Mr. Faye's agency. And I talk about agency because that's in some of the cases that I cited. And one of the cases is the Leiden case. And it talks about when an attorney has, has authority to act as an agent for a party. I mean, there's express authority, there's implied authority, there's apparent authority, but it always flows from an action or representation of the principal. So here that, that would be the defendant himself. Did the defendant do anything to lead anybody else to believe that this was his attorney in this matter? And at that time, well, at that time he was not his lawyer because the criminal case is long in, correct? Right. Correct. So, and he, he did not represent him on any other matters after April of 2016. Correct. There was testimony, there was an order of protection proceeding, but yes, that concluded had concluded by April or May, 2011, that that was the defendant's testimony. Right. So, I mean, we're talking about four months prior to this service and the defendant testified, he didn't even speak to him for those four months. He hadn't spoken to him since May of 2011. So how could he have given authority to accept service based on a September, 2011 call? Now we don't know exactly what happened. I don't, I it's, it's, we're talking about 10 years ago and memories have obviously faded, but Mr. Logan was clear in his testimony that he didn't authorize Mr. Fay to accept service or participate in this case on his behalf. And Mr. Fay saying he will accept service that doesn't create an agency or an attorney-client relationship which would operate to, I don't know, potentially waive service by participating in the case. So the question for the trial court is, was really whether or not he authorized Mr. Fay to accept service. That was the question and the trial court answered that question. Yes, it did. And it answered that it found that he did, but I submit that that was against the manifest weight of the evidence because the evidence was first off affidavits that weren't made with personal knowledge. And the evidence was the defendant's testimony that he didn't authorize. So how could the court come to that conclusion that he did authorize? But in every case you have competing testimony just about in a trial judge has to make a decision and it's either one or the other. It can't be both. Well, I submit we didn't have competing testimony here. Now, if, if there had been a witness or an affidavit that said, Mr. Logan talked to Mr. Fay, he authorized him. He told him it was okay. Then that would be a matter of weighing the evidence, but the court didn't have a competing narrative to, to, to base its finding on. The court only had these affidavits that were not based in personal knowledge and the defendant's testimony established that he didn't authorize this attorney to accept service. So, well, Mr. Gilbaugh, just as a practical matter, you are not contending that an individual can, well, are you contending that an individual cannot authorize someone to accept service on their behalf? No, I think someone can do that. Okay. Then it becomes a question of whether that authorized individual had the authority from the defendant to accept service, correct? Yes. Yes. Okay. Then it becomes a question of whether that's contested. If the agent, the attorney, the next door neighbor says, yes, the defendant told me I could accept service and the defendant comes in the court and says, I never told him that I never gave him the and that would be a manifest way to the evidence standard, correct? Sure. Yes. Okay. So we're not, we're not arguing over whether Faye could accept service. We're arguing over whether Faye had the authority to accept service, right? Well, I think it's a little complicated in that there are cases, including the Flores cases that says this can be done by contract. It should be, this can be, but we don't have a contract, you know, you could, you could do it by United Nations resolution too, but we don't have that. So the question is, did the defendant Logan give Faye the authority to accept service? And if he did service was I'm not sure your honor. I'm not sure because well, if you're not, if you're not sure, then the answer is an individual can never give the authority to a third party to accept service on his behalf. You can, or you can't, it's got, it's got to be given no doubt, but can he do that? I bring up the issue of contracts to wage service, because I think if someone in a contract says in signs of contract saying this person has authority to accept service of any case arising out of our dispute, that's, that's fine. That's accepted by the, but we don't have that. We don't have that exactly. So we have an oral contract. We have, what we have here is the allegation that there was a oral contract. That's what Mr. Faye is saying. You don't have to have it written. It can be oral. Right. And that's, and that's another problem. I believe that there is, you have to allege the specific, well, we have to prove the specific elements of a oral contract to find an oral contract and offer acceptance consideration. There may have been an offer to accept to, for Mr. Faye to accept service on Mr. Logan's behalf from the plaintiff's counsel making that offer. But did Mr. Logan accepted that offer? There's, there's no evidence to show that he's accepted it. And in fact, the evidence showed the opposite, that he didn't authorize, he didn't accept it because he didn't authorize. Actually, the evidence shows that he did accept it because we have Mr. Faye accepting it. And we have Mr. Kirshner's letter to him saying, you know, thank you for professional courtesy and so forth. So actually the evidence shows otherwise. Well, your honor, I submit that the evidence these affidavits weren't properly considered by the trial court because they don't, the affidavits not made with personal knowledge. If we don't buy that, then, then, then let's, let's assume we don't buy that. Sure. Then where are you? Well, then I say, where's the evidence that Mr. Logan actually, actually agreed to that? Where is it? Mr. Faye, I guess Mr. Faye received a fax, but that doesn't mean that Mr. Logan actually said this was okay for him to do that, that he could accept service for him because that's, that's the issue here. And the only evidence we heard on that issue was the defendant's testimony that he didn't authorize. It was his denial, but we have Mr. Faye saying the opposite. So it's a question of credibility is just as didn't say that he actually spoke to Mr. Logan. It doesn't say that he actually contacted him. It doesn't say that he actually authorized him to, to, to accept the summons on, on, on his behalf. So I submit that the trial court, the trial court's ruling was against the manifest weight of the evidence because it, because it relied on affidavits without personal knowledge, relied on a double hearsay statement. And it disregarded Mr. Logan's testimony because it found him not credible based on a collateral issue. And that's the Bucktown partners case that I cited collateral. What was the collateral issue? The collateral issue was the 2016 mail of the summons that he had it. And he turned it over and discovery that right. That, that, the defendant actually received the summons in the mail in 2016, but the material issue was whether he was served in 2011. So wait a minute. It wasn't that he, he received it in 2016. It was in 2016, you were asked to produce documents and the documents you produced included the summons and amended complaint. No, that's not correct. Your honor. So the, this, he, he produced the 2019 at the time of the hearing. And in those documents was this notice of motion default motion from 2016, which included the summons and a complaint. Okay. So the court determined that he was not credible on everything, including the 2011 testimony he gave, but if he authorized him in 2011, he found it was not credible because in 2016, he actually received a summons. So I submit that as a collateral issue and not an actually not a material issue. So he also found him not credible based on his felony conviction. Correct. I'm not sure. I don't believe the trial court expressly said that it was discussed at the hearing, but in the trial court's ruling, the trial court said it was a brief ruling. The trial said, I find him not credible on this issue, referring to the authorization of Mr. Faye. So I don't think the trial court took that as a basis for credibility, although it was raised to the trial court, but I don't believe it was the trial court's basis for its ruling. Okay. All right. And Mr. Goodwin, you actually are, you're out of time and you've been out of time for several minutes now. I just didn't interrupt because the justices were still asking questions. So you do have time for a rebuttal. We'll come back to you. Thank you. And Mr. Krishna. Thank you, your honor. I did have five pages of remarks, but most of that is now moot. All of your honors, there's two questions and some of the concessions. Just real briefly, this is not an issue of 2203 or 2213, because we're not talking about personal service. We're not talking about a bode service and we're not talking about waiver. We're talking about alternative substitute service by agreement that happens every day between attorneys. In fact, if you look in the record in this case, and this is in the record at C as in Charlie 1444, when Mr. Gilbell first filed the 1401 petition to vacate in this case, he called me and asked me for the professional courtesy of accepting service. That's in the record in an email I confirmed to Mr. Gilbell, in which I say it was a pleasure speaking with you today. I will, of course, extend the professional courtesy of accepting service of your two 1401 motion on behalf of my client. Not only does this go on between attorneys and lots of other cases, it happened in this case more than once. And it happened with Mr. Gilbell calling me. Now, it's interesting. What's interesting here is, and this is really the irony, when they filed, and you'll see this, when they filed their first motion to vacate, they cited to the wrong summons. They didn't even read or attach our motion for default and realize that the motion to default was premised upon Mr. Fay accepting service. Their original motion to vacate and quash service was premised upon a summons that we didn't even put forward in our motion for default. And you'll see the record at C1444 where I have that conversation with Mr. Gilbell and tell him at that time, I'm looking at your motion, I don't get it, because that's not the summons we based our default upon. Yeah, but that doesn't go to the issue that's being raised. It doesn't. It doesn't. No, what it goes to is Mr. Logan's credibility, that he's not even sharing with his own attorneys. So here's- I don't see that. I don't see the- Well, here, but here's- How do you get from that? You don't know what Mr. Logan said, unless it's in the- Well, because in that petition, they attached Mr. Logan's affidavit that says he never received any mail from us. And then we know years later, he did. He received lots of mail from us, including the summons and the default motion, which attached the letter I had Mr. Fay showing that that was the basis for service. But that was- Was that- As I understood what was being said, is that was received in 2016? You know, and I apologize. I don't have in front of me, but actually there were two motions for default sent to Mr. Logan. The one Mr. Gilbell was talking about in 2016 was the one that was- that we put forth and was acted upon by the court. We actually noticed it up earlier, and I believe it was in 2012, and we chose not to present it at that time. So there actually were several motions for default, one we never presented years earlier. So this wasn't a question that five years later, he was learning about this service. He'd been sitting on this mail for years. No, but the service in 20- the earlier service, it's not an issue here because- so we don't have to even consider it. So that- whether good, bad, whatever, that doesn't matter. The only one that does matter is the one before us now. Correct. It is that one. Mr. Fay, he has no recollection whatsoever. Mr. Fay has recollections to what his professional ethics were. He has recollections to what his customs and practice were and what he would have done in that situation. What he would have done, what he did do, may not be the same thing. True, but what the constellation of circumstances, the circumstantial evidence told the trier effect, a couple of issues. One, there's my letter confirming to Mr. Fay. Two, and this comes back to my email with Mr. Gilbell. At that time, service by Fay wasn't at issue and I explained to Mr. Fay, and it's confirmed in that email at C1444, that I had a conversation with Mr. Fay, that he had reached out to me and he advised me that he consulted with his client and had his client's authority to accept service. I advised Mr. of that in 2017, before Mr. Fay's authority was even at issue in that petition. And that sort of gets into Mr. Gilbell's argument of double hearsay. But we all know from back in evidence in law school, there's no prohibition against double hearsay. Either the hearsay is admissible or it's inadmissible. And you can have admissible double hearsay. And in this case, when you look at my affidavit and the representations that I make in the record, there are numerous exceptions under the hearsay rule. It shows habit and routine practice exception. It shows records of regularly conducted activity. It shows a statement by a party opponent or his agent or service or servant, and it shows effect on the listener. There are numerous exceptions. Your letter, your date is September 13, 2011. Your letter does not discuss the issue at hand. It doesn't say, the fact that he, no one's contesting, or maybe they are, but Mr. Fay said, I accept service. Okay. He might have, but that doesn't satisfy the legal issue here that the client agreed. That's the only issue. Absolutely. Absolutely. And had I, you know, had my crystal ball that day and saw that five years later, Mr. Logan was going to pretend he never had that conversation with Mr. Fay. Yes. The letter would have been much, much longer. We would have done something else. We probably would have just served Mr. Fay. The fact of the matter is there was no benefit to me, my client or Mr. Fay in Mr. Fay accepting service. The sole reason this came about was because Mr. Fay had called me and said, oh, your last summons wasn't good. So I took a look at it. I took his word for it that his client had moved and we got the new address. And I said, hey, you know, do you want me to send the sheriff to your registered sex offender client's new address? Or do you want to see if he wants to accept it? He calls me back. I've got authority to accept it. The same way when Mr. Gilbell asked me to accept service for my client, that I don't want the sheriff going to my rape victim's house and getting a pleading served on her from her rapist. That there are courtesies we extend as lawyers to each other with the authority of our clients that happened more than once in this case. And there's no, you know, I can't tell you whether Mr. Gil, I'm sorry, whether Mr. Fay was lying to me at the time. I don't, I was not there when Mr. Fay and his client spoke, right? I can't speak to that. I can only speak to what was said to me and then what I did in reliance upon those statements. And then the fact that Mr. Logan did nothing for years, notwithstanding that he had all the paperwork showing that his lawyer accepted service on his behalf, nothing for years and years and years. And then for some reason, in that moment in time, he said, I'm going to go in and contest this now. Well, when do you believe he had all those papers that you say for years and years? You know, and I apologize. I got my timeline here, but I don't have the first motion for default, which is in the record. And I believe it's contained within the supplemental record we put forward of the records Mr. Logan brought in that we'd mailed to him. And there are two motions for default in there. There's an earlier one that we didn't move on and present. And there's a later one. We're more interested in the later one, right? That's the one we're interested in. Say that again? We're interested in the later one, not the earlier one. Yes, yes. But they're identical, right? I don't mind, but you don't have any idea right now when that was. Oh, yes. I'm sorry. May 25, 2016, the default motion was mailed to Ryan Logan, and that's in the record at C1436. So he received the default motion, the second one, May 25, 2016, or it was mailed out to him. And then we mailed him the order of default, June 22, 2016, and that's in the record at C1441. And he did not come in to try and vacate that default until more than a year later. So he sat on it about almost a year and a half. Well, if he had never been served, effectively served, he doesn't have to appear at the default, right? Correct. Right. If there's no proper service, he never has to show up at all. Right. So the issue always boils down to, did he authorize Faye to accept service on his behalf in August or September of 2011? Yes. And the trial court heard Mr. Logan's testimony in that respect and found him unequivocally untrustworthy. Well, he didn't find him credible. And what he relied on to find effective service was your affidavit and the affidavit of Mr. Faye that essentially says, I don't really remember this, but I reviewed Mr. Kirshner's notes about our conversation. And I would have done that had I not talked to my client and got his authorization. Yes. In fact, it's one step further than just my notes. It's the cover letter I'd sent to Mr. Faye, which... Yeah, he reviewed all that. We have the fax confirmation sheet. And his point is, I received this clearly because there's a fax confirmation sheet. And had I not, I would not have done that if I did not have my client's consent. Right. Right. And the question then becomes, is that enough to establish effective service? Yes. Correct? Yes. Yes. Because there's no question the law allows for alternative substitute service. There's no question that an attorney can't ask the courtesy of another attorney, hey, check with your client, can you accept service on his behalf? The sole issue is one of credibility of Mr. Logan in saying, notwithstanding all these years later, Mr. Logan would take this position, reflect in our business records, what was happening at the time? Well, a cynic could take the position that it could happen all the time, that you can't trust anybody, right? Or that a plaintiff's lawyer, an unethical plaintiff's lawyer could make up this lawyer who said he's authorized to accept service and that never happened. I mean, I could think that that's possible. I enjoy logging into the ARDC website and reading the complaints that get filed every now and then. Is that possible with lawyers? Sure. I've read complaints. I know of lawyers that have lied to the court. I'm not one of them. And at the time there was no benefit to me or my client or Mr. to carry it out this way. I serve summons through sheriffs and special process service on defendants every day of the week. There was no reason to have done it this way other than it was a professional courtesy and I was trying to actually do Mr. Logan a favor and not having a sheriff come to his house. Well, Mr. Cruz, this is not a de novo review, but what strikes me and struck the trial judge is that you first made a phone call and he said he would get back to you and he did in fact get back to you and he left a voicemail message letting you know that he had the authority to accept service. You subsequently handed that out. You sent him an email along with facts of the discussion based or based upon his voicemail, correct? Just a fax. There's not an email. Oh, just a fax. Yes. Yeah. Okay. We're talking 20 a long time ago. All right. So, but you sent him a fax with a letter stating that pursuant to your voicemail, you're accepting service on behalf of the defendant. And so, and I'm sure that had to strike the trial judge that it was more than just a phone call and then a fax, but there's actually a voicemail, but that voicemail was not preserved. Is that correct? Correct. Okay. Right. So yeah, in terms of the timeline, my affidavit was not meant to be comprehensive of every conversation I ever had with Mr. Fay. I talked to him a number of times throughout the pendency of the criminal matter and the order protection matter. The way the initial conversation came up and I touch upon this in my email to Mr. Gilbell is that we had a prior summons, a substitute abode service on Mr. Logan, which at that time we didn't know he had moved. And it was Mr. Fay that had called me and said, Hey, you got bad service. And I said, let me look into it. And that's when I then called him back. And I said, okay, I see. Let me know if you want to accept, or if you want me to send the sheriff out to the new address, he said, let me get back to you. And that's when he got back to me, left the voicemail message, which in summary format was recorded in our, in our office case summary. And the facts then went out with the cover letter. I have had, now they're not part of the record, but I have had conversations with Mr. Fay subsequent to that with, you know, not, not too long after that, but then on the records, I won't, I won't get into that. Okay. Well, you're actually at this time, Mr. Christian, you're out of time, but if there was a point that you didn't get a chance to make, because this is someone asking questions, you can go ahead and do that. Well, yes. The only point I want to make right now is this is a manifest weight of the evidence matter. Great deference is given to the trial court who has the opportunity to, to weigh the credibility of the witness. And in order to, to reach the conclusion that Mr. Logan is asking you to reach, it has to strain logic and reason to disregard my affidavit, including the admissible hearsay statements contained in there to disregard Mr. Fay's affidavit as to his personal knowledge, as to his custom and practice, as to how he practices law to disregard the inconsistencies in Mr. Logan's affidavit in which he says, I've never received anything in this case, including summons and complaints. And then he comes in with the big stack of the summons and the complaints and the motion for default and the letter from Fay is in there. And you have to disregard the trial courts finding that Mr. Logan was simply not credible. And if you put all of that aside, then all you're left with is Mr. Logan's incredulous statement that I never told Mr. Fay he could do that. And that is what you have to then overturn the ruling of the trial court on. And that is not the manifest way to the evidence. And I think based upon the record before this should be affirmed. Thank you very much. Okay. Thank you, Mr. Krishna and Mr. Gilbert, before we go to you, there's someone that has either a television or a radio on in the background. It's on softly, but I can still hear it. So whoever has the radio or television going in the background, please shut it down. Okay. All right. So that must have been you, Mr. Krishna. When your, when your mic went off, it actually, I don't hear you anymore. That's okay though. All right. So now Mr. Gilbert. Sure. So I'll be brief because I think a lot of these issues I covered already, but as to the issue that, that Mr. Kirshner's affidavit included admissible hearsay, I take exception to that because he's saying that it's admissible because it's a statement by a party opponent by an agent, Mr. Logan. But again, that, that just gets us back to the issue. We haven't established the foundation that Mr. Fay was actually Mr. Logan's agent in the first place. That's a prerequisite to finding that it was a statement by a party opponent, by an agent of Mr. Logan. So I don't believe that's correct to say that it is admissible. I think the trial court improperly relied on a hearsay statement. And I think Mr. Kirshner said, he admits he doesn't have personal knowledge of the, of the conversations between Fay and the defendant and nobody I expect him to, but, but the trial court heard evidence from Mr. Logan that he didn't authorize Mr. Fay and the trial court improperly relied on a collateral issue to, to, to disregard his entire testimony. That collateral issue being received in the mail of a summons in 2016. The issue here is the service in 2011, not receipt in 2016. So I submit that the trial court improperly relied on, on affidavits that, that, that weren't proper evidence and that they were hearsay and not based on personal knowledge. And the trial court improperly disregarded Mr. Logan's testimony on his, uh, not granting authority to Mr. Fay in 2011. And unless there are any questions, I, I do not have anything further. Okay. Mr. Gilbaugh, Mr. Kirshner, thank you both very much. Excellent job. We appreciate excellence and, uh, this hearing is adjourned. Thank you.